verse of this grant of authority to the Attorney General to parole an excludable alien is the power to deny such parole. *Garcia-Mir,* 766 F.2d at 1484–85; *Jean v. Nelson,* 727 F.2d at 977. In other words, the Attorney General is under no obligation to parole excludable aliens—he may do so in his discretion. We also have determined a particularized standard of review for the Attorney General's parole decisions. In reviewing such decisions a federal court need only determine whether the Attorney General has advanced "a facially legitimate and bona fide reason" for his decision. *Jean v. Nelson,* 727 F.2d at 977; *see also Garcia-Mir,* 766 F.2d at 1485. The petitions at issue in this case show facially legitimate and bona fide reasons for the denial of parole on their face—indeed, the petitioners themselves note their past criminal convictions in their petitions.[6] Certainly the appointment of counsel at government expense for these excludable aliens challenging the Attorney General's refusal to parole them is unnecessary and unwarranted when the Attorney General's denial of parole is supported on the face of the petition by a bona fide reason for such denial.

### IV.

In summary, we reverse the district court's judgment for three reasons. First, the Criminal Justice Act does not authorize the appointment of counsel at government expense for excludable aliens challenging the denial of parole. Second, appellees failed to exhaust their administrative remedies prior to the filing of their petitions. Third, given the broad discretion of the Attorney General in this area and the limited scope of review for federal courts no substantive issue warranting the appointment of counsel exists. We view the district court's extreme step in appointing counsel at government expense for more than 1,000 individuals as inexplicable in light of the total absence of authority supporting such an action, the prior opinions of this court, and the overwhelming indications from the political branches that these appointments would run contrary to the established immigration policy in this country.

REVERSED.

Johnnie L. JOHNSON,
Petitioner-Appellee,

v.

Ralph KEMP, Warden, Georgia Diagnostic and Classification Center,
Respondent-Appellant.

No. 85–8716.

United States Court of Appeals,
Eleventh Circuit.

Jan. 30, 1986.

Rehearing and Rehearing En Banc Denied March 7, 1986.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant.

Alice C. Stewart, Atlanta, Ga., for petitioner-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

---

**6.** Each of the three appellees identified the following in his habeas corpus petition as the reason for his detention:

The Attorney General is detaining me based on a crime I was convicted of in the U.S., but for which I already served my entire sentence and/or was given probation or parole.

Crespo-Gomez noted an unspecified offense in his petition for which he was sentenced to one year of imprisonment and four years of probation. Machado-Matos' petition noted an unspecified offense for which he served time in Florida and also noted various prison infractions. Machado-Matos further stated in his petition that if released on parole he would have to return to Florida to complete a twelve year prison sentence. Perez-Perez indicated in his petition that he had served time for battery, had been arrested for possession of drugs but subsequently released due to lack of evidence, and had violated his previous INS parole.

PER CURIAM:

AFFIRMED on the opinion of the district court, 615 F.Supp. 355 (S.D.Ga.1985).

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles J. HAWKINS, Defendant-Appellant.**

No. 84–3594.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1986.

John M. Robertson, Mark L. Horwitz, Orlando, Fla., for defendant-appellant.

Stephen J. Calvacca, Thomas W. Turner, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Defendant-appellant Charles J. Hawkins served as both President of Washington Shores Federal Savings and Loan Association ("WSF") and Treasurer of Washington Shores Association for Recreation ("WSAR"). WSAR was essentially a day care center, funded primarily through grants and private contributions, which served a large number of families in a black community in the Orlando, Florida, area. Appellant was Treasurer of WSAR from its inception in 1970 until its demise in 1981, responsible for handling several million dollars of funding. An IRS tax lien against WSAR ultimately forced its sale in 1982.

Appellant handled all of WSAR's financial transactions through accounts at WSF. Appellant issued strict orders that no other WSF employee was to handle WSAR deposits. No one other than appellant had any records of WSAR's income or expenditures. A reconstruction through subpoena of WSAR's income and legitimate business expenses for the period of May 1, 1978, through September 20, 1979, revealed that the sum of $179,531 was missing.

A federal grand jury returned two separate indictments against appellant. The